IN THE UNITED STATES DISTRICT COURT
FOR THE TERRITORY OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>CASSIE D. HERNANDEZ,<br><br>        Defendant. | CRIMINAL CASE NO. 13-00047<br><br>**ORDER RE MOTION TO SUPPRESS ORAL STATEMENTS MADE BY DEFENDANT ON OCTOBER 5, 2012** |

The Motion to Suppress filed by Defendant Cassie D. Hernandez (hereinafter "Defendant") came before this court for an evidentiary hearing on December 10, 2013. After hearing the testimony of witnesses and argument from counsel, the court took the Motion to Suppress under advisement. For the reasons discussed more fully herein, the court sets forth the bases for its decision in **DENYING** said motion.

## I.    FACTS

Three witnesses testified for the Prosecution during the evidentiary hearing. No other testimony was offered. The Defendant submitted her exhibit, which was marked as Defendant's Exhibit A and which was admitted at the hearing. Said exhibit is a copy of investigative reports pertaining to the Defendant. It should be noted that the parties do not dispute the fact that the

Defendant was not warned of her *Miranda* rights.

On October 5, 2012, Special Agents Richard E. Novak and Jeremy Michael Kennon of the Air Force Office of Special Investigations (hereinafter "AFOSI") went to the Defendant's workplace.[1] One of the agents spoke with Colonel Johnny S. Lizama, Commander/Director of Staff for the Guam Air National Guard, and informed him that AFOSI wanted to interview the Defendant. Colonel Lizama contacted the Defendant's direct supervisor, who then sent the Defendant to Colonel Lizama's office.[2]

When the Defendant reported to Colonel Lizama, Colonel Lizama informed the Defendant that agents from the AFOSI were there and wanted to ask her a few questions. Colonel Lizama testified that he then informed the Defendant that at any point, she could leave and seek counsel. However, the Defendant was not informed that if she refused to talk, there would not be any repercussions.

Colonel Lizama walked the Defendant to an empty office right next door to his, where Special Agents Novak and Kennon were waiting. After the agents greeted the Defendant, Colonel Lizama subsequently left the Defendant with the agents and did not stay for the interview.

The office where the interview occurred had an L-shaped office desk, with a telephone, a computer, and some books and pictures. It also had a big window. The office door was closed but unlocked. The Defendant was asked if she wanted to sit down, to which she responded yes. The agents asked the Defendant to take a seat at the office desk chair, where an occupant of the office would normally sit. The Defendant did not object to where she sat. Special Agent Kennon

---

[1] Special Agent Novak testified that he and Special Agent Kennon first went to the Defendant's home, wherein they were informed that the Defendant was at work. The agents then proceeded to Anderson Air Force Base and eventually located the Defendant at the Guam National Guard Office.

[2] It was established at the suppression hearing that the Defendant was Colonel Lizama's subordinate.

sat across from the Defendant and Special Agent Novak sat at the end of the L-shaped desk. Neither of the agents sat directly next to the Defendant. Special Agent Kennon was closest to the door. Special Agent Novak then advised the Defendant that she did not have to talk to them and she can leave any time. The Defendant was not handcuffed, and the agents did not brandish any weapons or informed the Defendant that they had concealed weapons with them.

The interview took approximately one-and-a-half to two hours. Special Agent Novak testified that the length of the interview was fairly short for an investigation involving fraud. Soon after the interview started, the Defendant brought up the issue of her deceased brother.[3] According to Special Agent Novak, the Defendant said her brother was probably the reason why the Overseas Housing Allowance (hereinafter "OHA") investigations started and that she was upset that her brother's name was in the press. Special Agent Novak does not recall who brought up the issue of the Defendant's daughter, but the Defendant in her declaration indicates it was the agent who asked if the daughter was named after her deceased brother. The Defendant further states in her declaration that Special Agent Novak repeatedly accused her of fraudulently obtaining OHA funds.

The court finds that the interview was cordial and both agents testified that the Defendant was cooperative. According to Special Agent Novak, the Defendant was very willing to talk and she seemed very reasonable to talk with. The Defendant made incriminating statements about herself "pretty quickly" into the interview. At no point during the interview did the Defendant indicate to the agents that she wanted anyone in the office with her, or that she wanted to call someone or use the computer in the office. Neither Special Agent Novak nor Kennon brought in bank statements or any other evidence with them during the interview. Further, the agents did not

---

[3] In Defendant's declaration (ECF No. 10), she indicates that it was Special Agent Novak who questioned her about her deceased brother. The court finds the testimony of the agent to be credible.

3

disclose to the Defendant that someone had reported that she was illegally receiving OHA funds. According to Special Agent Kennon, the Defendant's finances were discussed later on in the interview as it pertains to her father making a deposit on her account. The Defendant's Leave and Earnings Statements were possibly discussed as well. The testimony at the suppression hearing show that the Defendant was not told what evidence the agents had against her.

## II.     DISCUSSION

Defendant contends that she should have been given her *Miranda* rights on October 5, 2012. *See* Mot., ECF No. 8. Thus, the Defendant is asking that the statements she made on said date be suppressed. *Id.*

On a motion to suppress, the controlling burden of proof imposes no greater burden than proof by a preponderance of the evidence. *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974). Moreover, the prosecution, as the proponent of the evidence, must bear the burden of proving its admissibility. *See United States v. Coades*, 468 F.2d 1061, 1064 (3d Cir. 1972); *United States v. Colbert*, No. 89-310, 1990 WL 5200 at *1 (D.N.J. January 23, 1990) (citing *Katz v. United States*, 389 U.S. 347 (1967)).

"No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. In order to permit a full opportunity to exercise the privilege against self-incrimination, the U.S. Supreme Court in *Miranda v. Arizona* decided that the accused must be adequately and effectively apprised of his rights. 384 U.S. 436, 467 (1966). If a person in custody was questioned without first being apprised of his rights, any statements made at that time may not be admitted as evidence against him. *Stansbury v. California*, 511 U.S. 318, 322 (1994); *United States v. Williams*, 435 F.3d 1148, 1152 (9th Cir. 2006).

The obligation to administer a *Miranda* warning is triggered "only where there has been

4

such a restriction on a person's freedom as to render him 'in custody'." *Stansbury*, 511 U.S. at 322 (citations omitted). To determine whether the person is "in custody," the court must examine all of the circumstances surrounding the interrogation. *Id*. However, the ultimate inquiry is whether there was a "formal arrest or restraint on freedom of movement" of the degree associated with a formal arrest. *Id. See also United States v. Kim*, 292 F.3d 969, 973 (9th Cir. 2002).

The court looks at the totality of the circumstances and examines the circumstances based on a reasonable person standard and not based on the subjective views of the person being interrogated or the person interrogating. *United States v. Bassignani*, 575 F.3d 879, 883 (9th Cir. 2009). The court asks whether a reasonable person in those circumstances would "have felt he or she was not at liberty to terminate the interrogation and leave." *United States v. Craighead*, 539 F.3d 1073, 1082 (9th Cir. 2008), citing *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). *See also Berkemer v. McCarty*, 468 U.S. 420, 441-42 (1984) (the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation).

This requires a fact-specific analysis that involves various factors when examining the totality of the circumstances. In 2009, the Ninth Circuit used the following non-exclusive factors: (1) the language used to summon the individual; (2) the extent to which the defendant is confronted with evidence of guilt; (3) the physical surroundings of the interrogation; (4) the duration of the detention; and (5) the degree of pressure applied to detain the individual. *Bassignani*, 575 F.3d at 883-84.

**(a) the language used to summon the individual**

The Defendant argues that because she was summoned by Colonel Lizama, who has authority over her, she felt compelled to talk to the agents. Refusing to answer the agents'

5

questions, the Defendant argues, was "tantamount to disobeying a direct order," which may potentially result in a court-martial. *See* Mot. at 8 and 10, ECF No. 8. The court finds this argument unpersuasive as Colonel Lizama testified that he told the Defendant that she was free to leave and seek counsel. Although she was not specifically told that refusal to talk would not result in any repercussions, a reasonable person in the Defendant's situation—having been told that she could leave any time—would not feel that refusing to talk to the agents would be tantamount to disobeying a colonel's order.

In *Minnesota v. Murphy*, the Supreme Court noted that "[i]n each of the so-called penalty cases, the state not only compelled an individual to appear and testify, but also sought to induce him to forgo the Fifth Amendment privilege by threatening to impose economic or other sanctions capable of forcing the self-incrimination which the Amendment forbids." 104 S.Ct. 1136, 1146 (1984) (citation and internal quotation marks omitted). This was not the case here. There was no evidence presented that Colonel Lizama threatened the Defendant with the possibility of facing a court-marshal or losing her job, if she refused to talk to the agents.

Thus, the court finds that this factor weighs in favor of the Prosecution.

**(b) the extent to which the defendant is confronted with evidence of guilt**

The Defendant disputes the Prosecution's position that she was not confronted with evidence of guilt. *See* Reply at 5, ECF No. 13. In support of her argument, the Defendant notes that the government had obtained her bank records prior to the interview. *Id.* at 6. The Defendant relies on *Dunaway v. New York*, 99 S.Ct. 2248 (1979), and *United States v. Micieli*, 594 F.2d 102 (5th Cir. 1979), arguing that "[a] showing that the investigation had focused on the defendant is likely to lead to a finding that the interrogation was custodial since the police would have reason, under the circumstances, to take the suspect into custody." *See* Mot. at 10-11, ECF No. 8. The

Defendant offers Exhibit A as further support that she was in fact already the focus of investigation prior to the October 5, 2012 interview.

However, in *United States v. Hall*, which the defendant has cited to in her motion, the Second Circuit noted that "focus" alone is not indicative of custodial interrogation. *See* 421 F.2d 540, 543 (2d Cir. 1969), *cert. denied*, 397 U.S. 990 (1970). *See also United States v. Eide*, 875 F.2d 1429, 1437 (9th Cir. 1989) (being the focus of an investigation does not automatically require *Miranda* warnings); *California v. Beheler*, 463 U.S. 1121, 1124 n.2 (1983), citing to *Beckwith v. United States*, 425 U.S. 3411 (1976) ("we rejected the notion that the 'in custody' requirement was satisfied merely because the police interviewed a person who was the 'focus' of a criminal investigation.").

The issue in *Dunaway* was whether the petitioner's statements, which were made after his *Miranda* rights were given, were admissible when made during custodial interrogation without probable cause to arrest. 99 S.Ct. at 2251. In that case, the Supreme Court found that the police violated the petitioner's Fourth and Fourteenth Amendment rights when he was seized without probable cause and subsequently transported to the police station for interrogation. *Id.* at 2258. The Supreme Court further found that the giving of *Miranda* warnings to the petitioner prior to interrogation did not cure the Fourth and Fourteenth Amendment violations. *Id.* at 2260. The factual and legal issues in the instant case are different from *Dunaway*. The legal issue before this court is whether the Defendant's statements should be suppressed because her Fifth Amendment rights were violated.

In *Micieli*, the Fifth Circuit identified the following factors as significant to the determination of custodial interrogation: (1) a probable cause to arrest; (2) the subjective intent of the interrogators to hold the suspect; (3) the subjective belief of the suspect concerning the status of his freedom; and (4) whether the investigation has focused on the suspect. 594 F.2d at

7

105. The court will not analyze the Defendant's motion to suppress based on these factors because these factors are outdated. Moreover, the Ninth Circuit had established its own factors in determining custodial interrogation.

The court finds that the Defendant was not confronted with evidence of guilt. There were no bank statements or any other evidence that was brought in and presented to the defendant during the interview. Further, there was no evidence presented to the court that the agents disclosed to the Defendant what evidence they had against her.

**(c) the physical surroundings of the interrogation**

The interview took place in an empty office with a big window. It had a desk, office chairs, a computer, a phone, a bookshelf, and even some books and pictures. Although the Defendant did not sit on the chair closest to the door, she sat at the office desk chair while the agents sat at the seats normally occupied by visitors. Neither of the agents sat directly next to her. A reasonable person in the Defendant's situation would find that this environment is not coercive in nature.

The Defendant relies on *United States v. Carter*, 884 F.2d 368 (8th Cir. 1989), arguing that *Carter* is analogous to the instant case, as the defendant in *Carter* was questioned at his workplace. *See* Mot. at 7 and 9-10, ECF No. 8. In that case, the defendant was questioned in the bank president's office, where he sat in between two inspectors and directly across from the bank security officer, who sat at the president's desk chair. 884 F.2d at 371-72. The inspectors nor the bank security officer did not tell him that he was free to leave or that he could refuse to answer any of their questions. *Id.* At 372. When the defendant offered to show the inspectors something, he was told, "no, just stay here." *Id.* The defendant was isolated from others who might provide moral support during questioning, and the questioning took about an hour and a half. *Id.* at 369

and 372. There was a security officer in the room, and the defendant was confronted with "damning evidence of guilt" (investigators discovered in defendant's wallet cash and a bearer check, which were the marked items that went missing from the mail trays). *Id.* One of the inspectors took a "hard" approach while the other was friendly. *Id.* at 372. Based on these facts, the district court found custodial interrogation and the Eight Circuit affirmed.

*Carter* and the instant case are similar in that both defendants were questioned for at least an hour and a half, at their workplace at someone else's office, where no one was around to possibly provide moral support. However, such similarities end there. *Carter* is distinguishable in that the Defendant in the present case was specifically told in the beginning of the interview that she did not have to talk to the agents and that she can leave any time. The defendant in *Carter* was not told these instructions and it was further implied that the defendant could not leave when he was told to stay in the room, after offering to show the inspectors the equipment he used in his work. Also, unlike the defendant in *Carter* wherein he was confronted with "damning evidence of guilt," the Defendant in the present case was not confronted with such. Lastly, the Defendant in the present case sat at the office desk chair. Neither agent sat directly next to the Defendant, unlike in *Carter* where the defendant sat between the inspectors and a security officer sat in front of him.

The Defendant also argues that the agents exercised control over her. Exercising control over a suspect and the physical surroundings generally involve a police-dominated environment. For example, in *United States v. Mittel-Carey*, while other agents searched the defendant's home, two agents remained with the defendant and escorted him around the house, including while he used the bathroom. 493 F.3d 36, 38-39 (1st Cir. 2007). One of the agents had an unholstered gun at one point, which the defendant saw. *Id.* at 38. *See also United States v. Brobst*, 558 F.3d 982, 995 (9th Cir. 2009) (uniformed and armed officers were waiting for the defendant outside his

9

home while other officers were already inside his home conducting a search); and *Craighead*, 539 at 1084-89 (defendant's home was crawling with a large number of officers wearing raid jackets and were visibly armed).

The instant case is unlike any of these cases. Although the Defendant was outnumbered (two agents versus her alone), the situation was not such that the physical surroundings were crawling with armed law enforcement officers. Further, the agents in this case had concealed weapons and there were no weapons brandished or shown to the defendant. The court does not find the physical surroundings of the interrogation to be police-dominated.

Accordingly, the court finds that this factor weighs in favor of the Prosecution.

**(d) the duration of the detention**

While Special Agent Novak noted that the interview was considered fairly short for cases involving fraud, the court finds that an hour-and-a-half-to-two-hours-long interview weighs against the Prosecution. *See e.g., Kim*, 292 F.3d at 981 (held accused was in custody during an interrogation that lasted approximately 50 minutes); *United States v. Beraun-Perez*, 812 F.2d 578, 579 (9th Cir. 1987), modified by 830 F.2d 127 (9th Cir. 1987) (accused was in custody during an interrogation that lasted between half an hour and an hour and a half).

**(e) the degree of pressure applied to the detained individual**

Defendant contends that one does not have to be physically bound to be restrained. *See* Reply at 4, ECF No. 13. The Ninth Circuit in *Beraun-Panez* found that although the defendant was not physically bound, he was subjected to psychological restraints. 812 F.2d at 580. In that case, the defendant was accused "repeatedly of lying, confronting him with false or misleading witness statements, employing good guy/bad guy tactics, taking advantage of [his] insecurities about his alien status, keeping him separated from his co-worker in a remote rural location,

insisting on the 'truth' until he told them what they sought, the officers established a setting from which a reasonable person would believe that he or she was not free to leave." *Id.* at 580.

In this case, the Defendant was not handcuffed at any point during the interview. Thus, the question turns to whether the Defendant was psychologically restrained. The Defendant asserts that she was placed behind a table facing Special Agent Kennon with Special Agent Novak blocking her exit during the interview. *See* Mot. at 9, ECF No. 8. Further, the Defendant asserts that she was isolated from others. *Id.* The Defendant in her declaration also asserts that she was repeatedly accused of fraudulently obtaining OHA funds. *See* Decl. at 3-4, ECF No. 10.

The Defendant was alone in the interview room with the agents, and Special Agent Novak was seated closest to the door. However, these facts alone do not automatically make the interview custodial. The Defendant was informed early on during the interview that she was free to leave at any point. Also, as discussed *supra*, a reasonable person in her circumstances would not find her seating placement to be coercive as she sat on the chair that an occupant of the office would normally sit on. The agents also testified that the Defendant was cooperative and very willing to talk.

As such, the court finds that this factor weighs in favor of the Prosecution.

### III. CONCLUSION

While the list of factors is non-exclusive, the presence or absence of any of these has been used by the Ninth Circuit to assess the totality of the circumstances of whether a defendant was in custody. Four out of the five factors are in favor of the Prosecution. Accordingly, based on the foregoing, the Defendant's motion to suppress the October 5, 2012 statements is hereby **DENIED**. A trial scheduling order will be issued separately.

**SO ORDERED.**



/s/ Frances M. Tydingco-Gatewood
    Chief Judge
**Dated: Jan 09, 2014**